FILED '09 FEB 13 13:44 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| GWEN PLOTTS, | ) | |
| | ) | |
| Plaintiff, | ) | Civ. No. 07-1604-TC |
| | ) | |
| v. | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| MICHAEL J. ASTRUE, Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

COFFIN, Magistrate Judge:

Plaintiff challenges the Commissioner's decision denying her application for disability

insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. The court has

jurisdiction under 42 U.S.C. § 405(g). The Commissioner's decision should be affirmed.

<u>Standard</u>

The burden of proof rests on the claimant to establish disability. *Roberts v. Shalala*, 66 F.3d

179, 182 (9th Cir. 1995). To meet that burden, the claimant must demonstrate an "inability to engage

1 - FINDINGS AND RECOMMENDATION

in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

This court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

<u>Disability Analysis</u>

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. <u>See</u> *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner, at step five, to identify jobs existing in significant numbers in the national economy that the claimant can perform. *Id.*; *see also* 20 C.F.R. § 404.1560(c)(2). The Commissioner can meet that burden "(a) by

the testimony of a vocational expert, or (b) by reference to the Medical-Vocational Guidelines [the Guidelines] at 20 C.F.R. pt. 404, subpt. P, app. 2." *Id.*

In this case, the administrative law judge ("ALJ") reached the conclusion at step four of the process that Plotts retains the ability to perform her past relevant work. Plotts contends that the ALJ failed to accurately assess her residual functional capacity ("RFC") because he improperly discounted the opinion of her treating physician, Robert Manley, M.D. The RFC assessment describes the work-related activities that a claimant can do on a sustained, regular, and continuing basis, despite the functional limitations imposed by her impairments. 20 CFR § 404.1545(a); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184.

## Discussion

An ALJ can reject a treating physician's opinion in favor of the conflicting opinion of another physician if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). If the treating physician's opinion is not contradicted by another physician, then the ALJ may reject it for clear and convincing reasons. *Id.*

Plotts was involved in a severe rollover motor vehicle accident in August 1987. She suffered a crushed pelvis and was hospitalized for several months. Metal plates and fastening hardware were required to repair her right hip. She ultimately returned to work and continued until she was laid off on February 28, 2002, when her employer implemented a reduction in its workforce. As part of her separation package, her employer provided education benefits. Plotts began a two-year retraining

program of college courses, which she completed in June 2004. Admin. R. 22, 208-09. Her disability allegedly began at the time that she was laid off and began taking college courses.

On October 2, 2006, Plotts began working for the Internal Revenue Service ("IRS") as a contact representative answering questions over the telephone. Plotts alleged a closed period of disability from February 28, 2002, until October 2, 2006, due to right hip pain resulting from the 1987 motor vehicle accident. Admin. R. 52, 195-96, 208-09.

A. Dr. Manley's Opinion

Dr. Manley took over Plotts's orthopedic care in April 2001. He reviewed her previous treatment records, including diagnostic images of her right hip from the time of the injury in 1987. Dr. Manley found no change in the amount of joint space narrowing, bone quality, or position of the prosthetic hardware. Plotts reported only occasional pain from the hip joint, and was able to work full time with reasonable precautions. *Id.* at 169.

In July 2001, Plotts tripped and fell on her right shoulder, right hip, and right lower back. *Id.* at 111-15. Plotts's primary care physician diagnosed a hip/lumbar strain which he treated with over-the-counter anti-inflammatory medications. He recommended x-rays and physical therapy, which Plotts declined. This strain resolved without further therapy before the alleged onset of disability. *Id.* at 127-30.

In March 2002, Plotts fell through an open trap door, causing pain in the left leg, right ankle, and right hip. X-rays showed the hip prosthesis was undamaged and revealed no changes when compared with earlier diagnostic images. *Id.* at 126-27, 140. In August 2002, Plotts had fully recovered from her fall. *Id.* at 123. In November 2003, Plotts reported pain "sometimes." She was not taking any pain medication on a regular basis. *Id.* at 167-68. Plotts told Dr. Manley that her

former employer had continued to lay people off and that she did not expect to be hired back. *Id.*
at 167.

By July 2004, Plotts had finished school. She was walking two to three miles per day,
several days per week. In September 2004, Dr. Manley told Plotts that he would support her
decision to apply for disability benefits. *Id.* at 163. Dr. Manley noted that Plotts was "providing
major care for her blind husband" and experiencing recurrent pain in her right hip. He opined that
"it is not unreasonable to consider that she is needed at home to help care as a caregiver . . . and that
she probably has very limited work that she can do." *Id.* at 161.

Dr. Manley obtained new x-rays and initially thought that they showed "marked loss of joint
space in the right hip with bone on bone" contact between the femoral head and the acetabulum of
the pelvis. *Id.* Dr. Manley corrected himself in January 2005, however, indicating that it was
difficult to see, but "when this is carefully looked at, there is still remaining joint space." Plotts had
not worn away the articular cartilage in the right hip joint and there was no bone-on-bone contact.
Plotts continued to walk and exercise a great deal and had good muscle bulk around the pelvis and
hip. *Id.* at 158-59, 161.

In June 2005, Dr. Manley opined that a job requiring Plotts to walk a route or stand a great
deal would be inappropriate for her. *Id.* at 183. Plotts continued her walking pattern of two to three
miles per day, five to six days per week. She had intermittent pain, which was fairly well-relieved
with Celebrex on an occasional basis. *Id.* at 179, 181. Through 2006, Plotts continued her walking
and exercise pattern. There was no change in her hip, but Dr. Manley noted progressive arthritis was
expected to be an issue in the future. *Id.* at 172.

In October 2006, Plotts told Dr. Manley that she had received two job offers. Dr. Manley recommended against a post office job because he believed that it would be difficult for her to sustain extensive walking and standing. He believed that she would be better suited to the other job with the IRS because it involved mainly sitting. *Id.* at 174. Plotts began working for the IRS on October 2, 2006. *Id.* at 195-96. That is the end of her alleged period of disability.

In November 2006, Dr. Manley completed a questionnaire regarding Plotts's physical functional capacity. He indicated that Plotts could lift less than 10 pounds. Her ability to stand, walk, and sit was less than two hours each out of an eight-hour day. He said that Plotts needed a sit/stand option to perform sedentary work. Dr. Manley indicated that Plotts could never climb, balance, kneel, crouch, or crawl and could only occasionally stoop. He believed that Plotts's concentration, persistence, or pace was mildly affected by her medical condition. *Id.* at 170-71, 185.

B. The ALJ's Findings

The ALJ did not accept Dr. Manley's disability opinion. *Id.* at 32. First, an ALJ is entitled to reject a physician's opinion that is conclusory and unsupported by clinical findings. *Meanal v. Apfel*, 172 F.3d 1111, 1117 (9th Cir. 1999). The weight to be given a medical opinion is determined by the extent to which it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent" with other evidence of record. 20 C.F.R. § 404.1527(d)(2). Dr. Manley's statements that he thought that Plotts was disabled and probably had limited work options are opinions on issues reserved to the Commissioner; those statements are not medical opinions within his expertise, but administrative findings requiring vocational information and expertise. Therefore, the ALJ properly gave those conclusions no special significance.

The ALJ found Dr. Manley's disability opinion inconsistent with his progress notes and objective findings. Dr. Manley consistently stated that the diagnostic images and clinical findings showed no change in the condition of Plotts's right hip. There was no deterioration in the medical findings at the time her disability allegedly began. Similarly, there was no improvement in the medical findings when she returned to work in March 2006. Plotts relies on Dr. Manley's treatment notes, erroneously finding marked loss of joint space and articular cartilage in December 2004. However, Dr. Manley changed that tentative conclusion after more careful review of the diagnostic images and found that joint pace and articular cartilage remained in the hip.

Moreover, the ALJ noted that Dr. Manley's disability opinion was based on a definition of disability which differed from the definition used by the Commissioner. Dr. Manley believed that Plotts should qualify for disability benefits, in significant part, because she was needed at home as a caregiver for her blind husband. An individual is disabled for Social Security purposes only if medically determinable functional impairments preclude substantial gainful activity. Dr. Manley's opinion was based on improper factors. Dr. Manley's advice to Plotts regarding her job-seeking activities reflects that he did not consider her disabled from all work. He cautioned her against employment requiring extensive walking and standing, but did not suggest she should avoid work of all kinds or abandon her job search.

The ALJ also found Plotts's reported activities inconsistent with Dr. Manley's opinion. On typical days during the period that she was allegedly disabled, Plotts attended college classes for three or four hours, walked two to three miles, exercised, provided care for her blind husband, and did six to eight hours of homework. *Id.* at 209. She testified that she could stand at least four hours out of an 8-hour workday and sit all day. *Id.* at 203. She testified that she lifted 10 to 20 pounds on

her home exercise machine. *Id.* at 208. Dr. Manley indicated should could not stand or sit for two hours total during a day or lift 10 pounds. *Id.* at 170, 185, 208. The ALJ reasonably could draw an adverse inference as to the accuracy of Dr. Manley's findings from these inconsistencies.

Second, an ALJ can reject a treating physician's opinion that is premised primarily on subjective complaints found to be unreliable.[1] *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989); *Tonapetyan v. Halter*, 242 F.3d 1144 at 1149 (9th Cir. 2001). An ALJ may discredit a claimant's testimony regarding the severity of symptoms by providing clear and convincing reasons for doing so. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir. 1996). The ALJ must make findings that are "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). The ALJ may consider objective medical evidence, the claimant's treatment history, daily activities, and work record, and the observations of treating sources and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284; SSR 96-7p, 1996 WL 374186.

The ALJ found Plotts's allegations about the intensity, severity, and limiting effects of her hip pain not entirely credible. In the absence of clinical findings to support his opinion, the ALJ could reasonably conclude that Dr. Manley relied primarily on Plotts's subjective reports. Such an opinion is no more reliable than the underlying statements upon which it is based. The ALJ reached

---

[1] Plotts challenged the ALJ's credibility determination regarding her subjective statements for the first time in her reply brief. The Commissioner briefed the issue, however, and it is adequately developed. *United States v. Montoya*, 45 F.3d 1286, 1300 (9th Cir. 1995); *Eberle v. City of Anaheim*, 901 F.2d 814, 818 (9th Cir. 1990).

8 - FINDINGS AND RECOMMENDATION

his credibility determination in light of Plotts's extensive activities, the absence of worsening medical findings at the time her disability allegedly began, the absence of improving medical findings when she returned to work, the fact that she stopped working due to a layoff rather than inability to perform work activities due to symptoms, and her ability to function using only occasional pain medication. Admin. R. 22-23. *See Bruton v. Massanari,* 268 F.3d 824, 828 (9th Cir. 2001) (sufficient reasons for disregarding subjective testimony include stopping work for non-medical reasons and failure to seek care for allegedly disabling condition at the time claimant stopped work). The ALJ's reasoning is clear and convincing and his findings are sufficiently specific to show he did not arbitrarily reject Plotts's statements.

Plotts contends that the ALJ elicited testimony based on assumptions that did not accurately reflect all of her limitations and restrictions, and that he should have included additional limitations based on the opinion of Dr. Manley. However, even if the factual record could also support the interpretation that Plotts urges, the court must uphold the Commissioner's rational findings of fact. *See Batson v. Comm'r of Soc Sec Admin,* 359 F3d 1190, 1193 (9th Cir 2004); *Andrews v. Shalala,* 53 F3d 1035, 1039-40 (9th Cir 1995); *Morgan v. Commissioner,* 169 F3d 595, 599 (9th Cir 1999). The court must uphold the Commissioner's determination if it is supported by substantial evidence, even if the evidence can rationally be interpreted in a way that supports Plotts's assertion of additional limitations. *Andrews,* 53 F.3d at 1039 ; *Morgan,* 169 F.3d at 599. Plotts's contention that the Commissioner's determination was based on improper vocational testimony cannot be sustained.

## **RECOMMENDATION**

Based on the foregoing, the ALJ's findings and conclusion are based on correct legal standards and supported by substantial evidence. The Commissioner's final decision should be AFFIRMED.

DATED this _13_ day of February, 2009.

Thomas M. Coffin
United States Magistrate Judge